If it please the court, Gretchen Fusilier appearing on behalf of the appellant, Mr. Valdes-Vega. Your honors, Mr. Valdes-Vega is requesting that this court vacate his conviction and find that the investigatory stop is illegal because it was not based on reasonable suspicion. We would like to emphasize in our argument to this court today that reasonable suspicion has not been redefined by the case of U.S. v. Arvizo, a January 2002 case from the U.S. Supreme Court. However, what the U.S. Supreme Court did in Arvizo, it did not make new law, but only gave another example of what reasonable suspicion is. As we know, reasonable suspicion, starting with the definition derived from Terry v. Ohio, indicates that there must be a particularized and objective basis for an intrusion of a person on the common streets of the United States. Mr. Valdes-Vega was driving on a well-traveled interstate freeway, the 15, at approximately 2 o'clock when he was observed by border patrol agents at the extended border checkpoint. The indications that the officers used were not particularized and objective as it related to any kind of criminal activity that might have been afoot. Their basis as articulated was that Mr. Valdes-Vega was driving a clean F-150 pickup truck that had Baja, California license plates, was traveling slightly faster than the other traffic on the freeway that also was apparently exceeding the 70-mile-per-hour speed limit, and failed to make eye contact with the officer as the officer approached his pickup truck. The district court's judge, in denying the motion to suppress the investigatory stop and all evidence derived from the search thereof, indicated that it did not give any weight to the fact that Mr. Valdes-Vega did not make eye contact. However, based on the other indications, the court felt that there was a particularized or at least reasonable suspicion because one of the patrol officers in his declaration indicated that this corridor, the 15 freeway, is used for smuggling both aliens and drugs. They use large vehicles and they usually wait until the border checkpoint is non-operational, meaning that the cars passing through it are not stopped and individually inspected. Counsel, it seems here that the driving seems in addition to all of the other factors. As you know, you've referenced Arvizo here today. I guess, how is this different from Arvizo in terms of the type of activity? I understand that there are indicators here of facts that show a generalized, more generalized suspicion, but taken together, do they not, in the totality, create a more particularized suspicion, especially when you include the erratic driving? Your Honor, we would submit that it does not. We look at the case of United States v. Sigmund Ballesteros, which was decided after Arvizo. And that case indicated also that the car was driving at a higher speed than posted. It was on an interstate. The car did slow down when it saw border patrol. However, there was nothing that was out of the ordinary or peculiar about the set of factors that the court assessed and evaluated in Ballesteros. Similarly, in Mr. Valdez Vega's case, although he was speeding, so were the other cars. And to say that a slightly higher speed is more indicative of criminal conduct being afoot, in the totality of that circumstance, does not indicate criminal activity. Rather, it would ensnarl many of innocents into an intrusion, which is not sanctioned by the Fourth Amendment. Wasn't there also, I believe the district court observed 10 lane changes without signaling? Well, Your Honor, I don't think that that, even within the totality of the circumstances, indicates anything that is so peculiar and out of the ordinary that one can say, cumulatively, this looks like someone who is involved in criminal activity. We look at comments made by the Arvizo court indicating that certain activity, if done on a busy freeway in San Francisco, for example, would not be considered criminal activity, but might be if compared to, if contrasted with the same activity on a primitive unpaved road, such as the fact was in Arvizo. If we look at the characteristics of what the courts have held. Let me ask you, are you familiar with Leal, U.S. v. Leal? Your Honor, off the top of my head, I'm not. Oh, okay. Because it seems like the facts there are less than what we have here, and the court found that it was sufficient for reasonable suspicion. So I was just curious to see if you had any comments with respect to that case. Your Honor, unfortunately, I have not cited that case. Okay. And I'm not. Well, we have a number of cases, or a couple of cases that deal with this issue, so I have the benefit of having other cases as well that have been presented in their briefing. Yes, Your Honor. I don't have any particular comments on any of the other cases, such as the Sofalo case, which has been cited, Terry v. Ohio, for example, the factual circumstances of Arvizo. However, our position is that even though an officer might be proven correct by what he finds, that cannot be included into the reasonable suspicion calculus. And based on the totality of what Mr. Valdez-Vega's activity was at that time, the truck was not suspicious, as pickup trucks, as stated in Ballesteros, is one of the most popular vehicles on the street now, especially in that area which we've indicated is somewhat agricultural. We have two minutes. I don't know if you want to reserve that time. Yes, I will reserve it. Okay. Thank you very much. Judge Pegerson? Please proceed. Good morning. May it please the Court, Dan Ackerman on behalf of the government. Your Honors, the main point the government would submit to take away from the Arvizo case is simply that a divide-and-conquer analysis should not be done when assessing whether or not the totality of the circumstances test for reasonable suspicion is being done. And our view is that that is exactly the kind of analysis that the appellate is asking this Court to engage in here by taking each factor that the officer cited in isolation, offering an innocuous explanation for that factor, and then asking the Court as a result of that to disregard it from its analysis. And I appreciate that. This case seems a little unique in that a number of the factors, all except the erratic driving, seem to be common to everyone who drives on, is it I-15 or I-5? I don't remember. It's I-15, Your Honor. I-15. This was 70 miles north of I-15? Yes. This was in the area of that last checkpoint. Right. And this was a clean, red pickup truck, correct? That is correct, Your Honor. All right. And each of those things which you're saying, so let's take all those together, counsel. We have a clean, red pickup truck driving 10 miles maybe over the speed limit at times, but apparently consistent with the flow of traffic along that corridor. This is in a remote area. Let's take all of those factors together, the totality of them, all right, without the erratic driving that occurred. And would you say without the erratic driving that would have been indicative and sufficient for a law enforcement officer to pass some, to stop someone? Well, Your Honor, that would depend in large part on the training and experience of the agents who made those observations and how well they could support those observations. Well, let's say it's these agents, these agents here. Would that have been sufficient? You think anybody driving a red pickup truck, it's clean. Okay. Because, again, some of these items, the large truck, the very generalized, I mean, the clean versus the dirty, I've seen the dirty be indicative, so I think that's given less weight than perhaps, you know, some of the other factors. But just say it's an experienced officer with those, what would you say? Is that sufficient for reasonable suspicion? Well, in this case, yes, Your Honor, because both agents were able to explain what the significance of each of those factors was based on their prior investigations in this area. And for Agent Hayes in particular, his 11 years have come at this specific checkpoint. So as far as you're concerned, we don't even need the erratic driving. That is correct, Your Honor, because in this case, for instance, the agents were able to explain that the reason the size of the truck mattered to them was because based on past investigations that they have done, smugglers like to use larger trucks because they can accommodate larger loads and that apparently in their experience, they are harder sometimes for agents to see in. But I thought there was a case that said that we're not, I mean, the officer's experience is a factor, but it's not dispositive. It seems like you're putting all the weight on the officer's experience. Your Honor, I don't mean to do that, simply that it is an important point to bear in mind when this type of analysis is being done, because the courts have made the point that what may appear to be innocuous and not reasonable to the untrained eye may on the other hand seem like reasonable suspicion to an experienced law enforcement agent. And in some of the instances where courts have found that there was no reasonable suspicion, it would seem as if because at the district court level, there was not a sufficient record made of what the particularized and objective basis was by those agents, and the government would submit that that was done here at the hearing and in the declarations. So as long as the agent says a large truck is relevant or important, as long as the agent says it's clean is important, as long as the agent says that driving in that area 70 miles north of the border is important, as long as the agent says it was driving with Mexican plates is important, that's all that we need. As long as the agents are able to explain why those factors are significant to them. One other point that I would make, counsel did mention Sigmund Ballesteros. This is a perfect example of how fact sensitive these cases are. There, one of the factors that the officer cited to was the fact that the driver had put up his hand, I believe, so as to avoid eye contact. The avoidance of eye contact was a point that the officer in that case signaled. That here also, there was the avoiding of eye contact. However, in that case, the reason why that factor was not attached, the kind of weight that it may be in another case, was because the record also showed that the driver there had only put up his hand after lights had been flashed from the patrol officer's vehicle, which was coming in the other direction. So the point simply is that in this specific case, these factors do support a finding of reasonable suspicion under the totality of the circumstances, because there was a particularizing objective basis articulated by the agents and bolstered by their experience. I guess that concerns me a little bit here, because there are a lot of people who drive big trucks in that area, and so I guess every Border Patrol officer who's sitting there, they already have their reasonable suspicion that as soon as you drive up in a big truck that is apparently clean or sometimes dirty, that has Mexican plates, they just need to see you and stop you. That's kind of what you're saying. No, Your Honor, because if the court just looks at what happened here, some of those observations were made by Agent Lopez. However, even having made them, he radioed ahead to Agent Hayes. Agent Hayes then begins to follow the appellant and makes his own observations, bringing his own experience to bear. So even though under the collective knowledge rule, arguably, he could have made the stop based solely on what Agent Lopez had seen, that is not exactly what happened here. He was able to testify at the hearing and in his declaration as to his own observations about how the appellant was driving. And so I certainly understand the concern that the court is raising. Well, especially because the law is that traffic violations alone aren't sufficient. I mean, I guess a DPS officer can stop you for a traffic violation, but a Border Patrol officer cannot, correct? I mean, subject to all of these other indicia that they find that would support reasonable suspicion, correct? That is correct, Your Honor. Members of the Border Patrol will normally make stops if they believe, based on their training and experience, that the person driving the vehicle may be engaged in drug trafficking or alien smuggling or some type of criminal activity. But they are not like California Highway Patrol officers who will pull people over to cite them. But why couldn't an officer use this case, I guess, and say, well, because we know that a large truck, and again, I'm kind of restating this, but this is really kind of what's the most troubling aspect of this case. If it's a large truck, I already have my basis here. If it's a large truck with Mexican plates, there's no other. It's not riding low. It's not jacked up high. There's not tinted windows. There's not anything else that's sufficient, according to you. If the officers are able to articulate a particular and objective basis for those observations. When you say, so that means every red truck or every truck with Mexican plates, because they'll be able to articulate the same thing that these officers have. What's so unique about what these officers have articulated? Well, Your Honor, I would respectfully suggest that if that were the case, some of these cases that have been cited in these briefs would not necessarily have come out the way that they did. The fact is that in some of these cases, the government was not able at the hearing to produce that particularized and objective basis, which is why sometimes in certain cases they will be able to affirm the finding of reasonable suspicion, and sometimes they won't. I would just add, since I see that my time is running out, that a lot of these cases do point out that this is a very challenging area because we're trying to do analysis. Mr. Hanselman? Yes, Your Honor. Judge Ferguson, before you time runs out, I thought I heard you say that the speed of the vehicle, the erratic driving that was described, that those are really not very important factors here. And now, is that what you said? No, Your Honor. I think all that I was saying was that even if we did not have the erratic driving, I think was the question that was being asked. Now, you see, I thought the way I read this was that here you have this red pickup truck. It's clean, and that apparently allows the suspicion that after the vehicle crossed the border, it was able to stop and have the body of the vehicle rushed down the street. But I understood that what was key to me was that with at least ten times, there were over-the-counter traffic violations involving lane changes, blocks, and it was just completely unexpected from other drivers. Nothing to that effect. Now, to me, that was the key. It was a very vital factor that was wrong. The problem there was that these erratic guys, erratic driving, and this red pickup truck that was making terrible lane changes, had ten times the maximum hitting speed of 90 miles an hour. Now, that certainly would have helped to give the officers an opportunity to pull them over and question the safety of that pickup truck. But, you know, we have here a case involving a red pickup truck that's been lane changed. One of the factors was that we had a white van, and there one of the factors was that it was reduced to probably 50 white passengers by two-thirty. And so, what is it that is owed and what is paid? And so here again, we have there with the Baja state. And, well, I'm not going to show you that. This is basically it. Tell me more on that. Well, Your Honor, if I understood you correctly, I suppose I would say that in the training and experience that these agents develop over time, they interview. We have training and we have experience. You know, sometimes it's better to figure this out first. And, well, that's part of the stand-by position. We have training. We have experience. And so whatever call we make, it's not to do the first call. Because we've done this for many, many times. And we may have done it many, many times. Maybe many, many times. But it's sort of an asset to bring a link to that call. And you hear in all these cases that I can't back and I can't back. Whether we ever suppose that we need to argue reasonable suspicion with a license plate check to the assistant. Your Honor, I don't believe that in this case the agent Lopez was able to do a license check plate if that's what the court was asking. Well, well, does the building keep track of the license plate that's on the license plate? Is that a possibility? Your Honor, it's quite possible that they do. However, I believe that if the court looks back, Agent Lopez lost track of the appellant because of the manner in which he was driving and the speed at which he was going. And that's partly why he radioed ahead for Agent Hayes' assistance. Otherwise, he might have been able to do that. But he said that that was an important factor. Without that factor, he still had reasonable suspicion. And that was because the car was clean. Without that factor. Well, thank you, Mr. Ackerman. I appreciate it. You have two minutes, Ms. Wiesner. I would like to indicate primarily that the only indications that Officer Lopez radioed to Hayes was what might have been traffic violations, excessive speed and going from weaving through the traffic. If that were the case, the Border Patrol does not have jurisdictions to make traffic stops and should have radioed up to the CHP that has a substation at the same location. Also, Officer Hayes indicated that numerous types of vehicles are involved in smuggling. He could not say whether or not trucks are used more than a regular type of a large vehicle. And that's at our excerpts at page 98 and 100-101. Also, the particularized and objective basis is not just a catch-all phrase. As this Court has said in Ballesteros, the particularized activity must not be something that appears to be prefabricated or recycled profiles of suspicious behavior that would normally be considered lawful behavior. And the eye contact issue, the district court actually discarded that, did not use that because the district court felt it was somewhat boilerplate and unreliable as a basis of suspicion. But let's take, I do want, I know I asked Mr. Ackerman a number of questions, but here we do have a large truck and, I mean, that could be carrying either individuals or drugs along this known highway to do that. And you have someone who was driving from Mexico that the officer knew. And so I don't want to discount the officer's experience. And so when we look at it like we must, according to our visa, that the totality and then on top of it you have someone who's driving erratically. And I think you have an officer who said, I think it was Agent Hayes, who said he thought that the driver was trying to create distance between himself and Agent Hayes. Why isn't that enough? Well, I think it's within the human conditions to try to create some distance when you see a patrol officer. Usually some of the cases, Ballestero, Terry, not Terry, Socolow, and I think even Arvizo indicated that you can, the particularized objective standard has to be filtered through reasonable assessment. And when the net is cast so broadly, even though, well we don't know that this truck came from Mexico, the fact that it had a Baja license plate, there was no tip to the officers that it had recently crossed the border as opposed to living in San Diego and just continuing to have Baja license plates. So that's a fact that we don't know. Excuse me. Let's just do some more. I understand that a security patrol agent has uselessness, invasive, and widespread IC that has been supremely violent in California law. Are you saying then that that officer, that service patrol officer, cannot consider that type of driving and deciding whether there's a need for those restrictions? Can't consider that? Because, you know, there's always the issue of a traffic ticket. Is that what you're saying? No, Your Honor. What I'm saying is... That's what you started off with, by saying that that needs to go. What I'm saying, Your Honor... But they have to contact the highway patrol and get that on the radio, too. Your Honor, what I was saying is that when Officer Lopez radioed to Officer Hayes, the only factors that he was concerned about was excessive speed and weaving. He had no information... How do you know that? Because that was his testimony at the motion to suppress. What did he say? He said that he radioed three factors about the red truck to Border Patrol Officer Hayes. The truck was traveling at a high rate of speed, was weaving through traffic, and that is in our excerpts at page 78 to 79, and it quotes the...that's not the exact testimony. That's a summary of the testimony, but that's what he testified to. That's what he testified to. He's waving his head, waving all of his head to the highway patrol, and telling them how to identify this vehicle. So it's true. Yes, he indicated it was a red truck as the identity of... That's not how it was driving. Yes, the red truck and the manner of driving. But he did not indicate at that time that he had any suspicion of... He didn't think he was going to survive. He's got a reasonable suspicion. From the time that Officer Lopez initially saw the truck to the time it was stopped, he had only gone five miles, which is a short distance. But in that short distance, all of the... I'm not saying that one of them should not have been considered, one factor should not have been considered. I'm looking at the totality of the factors and filtering... What factors should not have been considered? Well, the district court said that the failure to make eye contact it did not consider. I'm not saying that any of the factors should not have been considered, but quoting or using the language of Arvizo from the U.S. Supreme Court, the factors must fit into the circumstance, the context, the geographical area, the type of vehicle so that they have cumulatively probative value. Thank you. Thank you. Thank you very much. We're out of time. I'm sorry. We're going to have to... You're talking about a general rule now. Okay. I understand that. Thank you. Thank you. All right. The case is now submitted. Appreciate your argument, and thank you all for being here. Well, now, the next case, Inezes v. Benjamin Schwartz, has been submitted on the brief, so I believe we're ready to proceed with United States v. Salvador Pacheco-Garcia and Mauro Barrera-Moreno.
judges: Conlon, Pregerson, Murguia